# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# SOUTHERN DIVISION

No. 7:13-CV-00234-RJ

| | |
|---|---|
| ROBERT J. MCCORMICK, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **ORDER** |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-40, DE-41] pursuant to Fed. R. Civ. P. 12(c). Claimant Robert J. McCormick ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on September 15, 2010, alleging disability beginning September 1, 2010. (R. 122, 201-14). Both claims were denied initially and upon reconsideration. (R. 81-118). A hearing before the Administrative Law Judge ("ALJ") was held on May 18, 2012, at which Claimant appeared *pro se*

and a witness and a vocational expert ("VE") appeared and testified. (R. 21-70). On August 10, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 119-36). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 19), and submitted additional evidence as part of his request (R. 9-16). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review in decisions issued on September 10, 2013, and on October 31, 2013. (R. 1-8). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

2

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

3

In this case, Claimant alleges that (1) the ALJ used an improper application of the listings, (2) the ALJ improperly weighed the medical opinion evidence, (3) the hypothetical questions posed by the ALJ to the VE were inaccurate and inadequate, (4) the ALJ failed to fully and fairly develop the record, (5) Claimant has shown good cause to remand his case due to the relevant and material evidence not submitted during the original hearing, and (6) the Appeals Council failed to consider Claimant's additional medical evidence submitted after the ALJ's decision. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-40-1] at 14-22.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 124). Next, the ALJ determined Claimant had the following severe impairment: chronic obstructive pulmonary disorder ("COPD"). (R. 125). The ALJ also found Claimant had non-severe impairments of obesity and left eye exotropia, which is a form of strabismus (Claimant is cross-eyed). *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 125-26).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following limitations: Claimant should avoid concentrated exposure to working around hazards, such as unprotected heights and moving machinery; avoid

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

concentrated exposure to respiratory irritants, such as fumes, odors, dust, and gas; and should avoid concentrated exposure to temperature extremes, especially high temperatures. (R. 126). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 126-29).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a dump truck operator, tire worker, truck driver, and meat trimmer. (R. 129). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 130-31).

## B.   Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 40 years old and unemployed, living with his wife and two children, ages one and a half and eight. (R. 29-30, 43, 46). Claimant is a high school graduate. (R. 64). Claimant was last employed with CM Lindsay as a dump truck driver in 2006 through 2008, and in 2010. (R. 31-33). Claimant has held many jobs in the trucking industry, driving trucks both cross-country and locally. *Id.* Claimant has driven in the lumber service industry where his duties included unloading the truck once he reached the dock, and for Nordic Refrigerated Services where he loaded and unloaded trucks, did maintenance on refrigeration units, and would have to lift 50 to 60 pounds at a time. (R. 31-32). When Claimant was a dump truck driver, he would have to dig out dirt that would get stuck in the bed of the truck as he was frequently unable to wash out the dirt. (R. 48). Claimant lost his commercial driver's license because he did not have the money to get it renewed, but doubts whether he would now be able to pass the physical exam to renew his license. (R. 47). The ALJ reviewed with Claimant his

5

medical treatment since September 2010, and discussed medical records she would have to obtain from Lumberton Health Center, Dr. Beasley, and Roberson Health, as there were no medical records from November 2010 until February 2011. (R. 35-40)

Claimant was hospitalized due to emphysema, pneumonia, and related breathing problems from September 1 until September 6, 2010. (R. 33, 35). He has not worked since he was hospitalized. (R. 33). Claimant testified that before he went to the hospital on September 1, 2010, he could not sleep because he was having trouble breathing. (R. 34). That evening, Claimant stayed up all night standing in front of the air conditioner trying to breathe, and finally went to the hospital. *Id.* Claimant testified that he was weak for several weeks and months after leaving the hospital, and since then he has gained some strength back but his condition was worsening prior to the hearing. *Id.* Claimant uses oxygen at night, and sleeps in front of a fan because the air flow helps him breathe. (R. 34). Claimant testified that he began using an electronic cigarette two or three months before the hearing, and about a month prior to the hearing cut back to one or two cigarettes a day. (R. 35).

Claimant testified that upon waking in the morning, he feels weak and is pale. (R. 40). Normally, it takes Claimant an hour or two to get his blood flowing to his head and get some color back in his face. *Id.* Claimant testified that he loses his breath quickly. (R. 41). For example, if he parked the car and walked across a parking lot to the store, he would be winded and would have to sit down and rest before going inside to shop. *Id.* Claimant's wife usually takes care of the shopping, as Claimant does not go to big stores but might occasionally go to a small grocery store or gas station. *Id.* Claimant testified that he moves more slowly than he used to. (R. 42). Sometimes Claimant tries to mow his yard with a push mower, but he does not have the strength and

6

usually Claimant's son will finish the job. *Id.*

Claimant lives in a two-bedroom single-story house. (R. 43). On a normal day, Claimant tries to get some exercise by walking around outside. *Id.* Claimant spends most of his time doing limb removal in his yard. (R. 43-44). Claimant's son cuts the trees down and Claimant cuts the small limbs off (ones no bigger than his thumb) and drags them to the road. (R. 44). Claimant testified that he takes several breaks and will suffer in the afternoon or at night when he has been pulling limbs. *Id.* Claimant testified that he used to be able to pull everything to the road, but activities have gotten harder for him. *Id.*

Claimant testified that his doctors have not suggested that he go on a diet or try to lose weight. (R. 45). After dinner, Claimant cleans up the table, gives his children their baths, takes a bath himself, and watches the evening news. (R. 46). Claimant testified that the Social Security Administration has records stating that he is unable to watch his children while he is at home. *Id.* Claimant estimated that he could lift 25 or 30 pounds and walk one to two hundred yards before losing his breath and needing to rest. (R. 49). Claimant stated he had no reason to say that he could not sit for very long. *Id.* Claimant testified that if he had to work with 10 pounds on a regular basis and 20 pounds occasionally, he would be able to handle it for a little while but he would lose his breath if he had to carry that weight for a long distance. (R. 49-50).

## C. Robert Crow's Testimony at the Administrative Hearing

Robert Crow ("Crow"), Claimant's stepson, testified as a witness at the administrative hearing. (R. 51-54). Crow testified that either he or his brother helps Claimant cut the grass in his yard, as Crow would observe Claimant sweating badly and losing his breath when Claimant tried to do it himself. (R. 53). Crow stated that he worried about Claimant "just dropping out there in the

7

yard." *Id.* Crow also testified that he helped Claimant clear some bushes and small trees in Claimant's backyard, by using his truck to pull some of them down and then dragging them out to the road, essentially doing the "heavy stuff on the yard cleanup." (R. 53-54). Crow noted that he observes Claimant losing his breath really easily, even when doing small household tasks like washing the dishes. (R. 54).

## D. Vocational Expert's Testimony at the Administrative Hearing

Dr. William Stewart testified as a VE at the administrative hearing. (R. 54-66). After the VE's testimony regarding Claimant's past work experience (R. 55-59), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed five hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual can perform medium work and stand, walk, and sit for at least six hours in an eight-hour work day with normal breaks, and should avoid concentrated exposure to working around hazards such as unprotected heights or moving machinery, respiratory irritants such as fumes or gasses, and temperature extremes, especially high temperatures. (R. 59-60). The VE responded that Claimant's past job as escort driver would not be excluded as it is normally performed, but testified that it would be excluded based on Claimant's description of how the job is actually performed. (R. 60). The VE stated that Claimant's other past jobs would be excluded based on the exposure to moving machinery and temperature extremes. *Id.* The VE then identified other jobs that the hypothetical individual could perform: several different machine tender/machine operator jobs (DOT # 920.685-078, medium, SVP-2, unskilled); hand packer (DOT # 920.587-018, medium, SVP-2); warehouse worker (DOT # 922.687-058, medium, SVP-2); and forklift operator (DOT # 921.683-050, medium, SVP-3). (R. 61).

8

The ALJ then asked what jobs a hypothetical individual with the same limitations who was able to perform light work would be able to perform. (R. 62). The VE responded that such an individual could perform the following unskilled and low-semi-skilled jobs: assembler (DOT # 706.684-094, light, SVP-4, semi-skilled); inspector/packer (DOT # 559.687-074, SVP-2, unskilled); and packing machine tender or machine tender (DOT # 920.685-082, light, SVP-2, unskilled). *Id.* The ALJ then asked what jobs a hypothetical individual with the same limitations who was able to perform sedentary work would be able to perform, and the VE identified the following jobs: order clerk (DOT # 209.567-014, sedentary, SVP-2, unskilled); assembler (DOT # 734.687-018, sedentary, SVP-3); and table worker (DOT # 739.687-182, sedentary, SVP-2, unskilled). (R. 63).

The ALJ inquired about the skill level of the assembler jobs identified at both the light and sedentary levels, and whether Claimant would be prepared for the required skill level as a high school graduate. (R. 64). The VE responded that the assembler jobs are semi-skilled because of production requirements, not because they require clerical or mechanical skills, and opined that those jobs would not be more complicated than Claimant's past work as a truck driver and are comparable in skill level in terms of dexterous requirements. (R. 64-65). The ALJ then inquired whether any of the previously-identified sedentary jobs would be precluded if the third hypothetical individual who could perform sedentary work were limited to standing or walking only one hour of an eight-hour work day. (R. 65). The VE responded that if the individual were primarily sitting in those jobs, his ability to perform them would not be restricted by the additional limitation. *Id.* Finally, the ALJ asked whether the identified sedentary jobs would be precluded if the hypothetical individual could not work a full eight hours a day. *Id.* The VE responded that such an individual "could not be productive on a reliable and sustained basis in any kind of work as long as that continued" and would

9

not be able to perform those jobs due to the inability to function on a normal schedule. (R. 65-66). The VE concluded by stating that his testimony was consistent with the Dictionary of Occupational Titles, except for the question about only being able to stand or walk for one hour, where his response was based on his clinical and professional experience over the years. (R. 66).

## V. DISCUSSION

### A. The ALJ's Application of the Listings

Claimant contends that the ALJ used an improper application of the listings, as the ALJ considered only section 3.02(A) to the exclusion of 3.02(B) for chronic restrictive lung disease and 3.03 for asthma symptoms. Pl.'s Mem. at 14. In support of this argument, Claimant states that his treating physician, Dr. Beasley, diagnosed Claimant with chronic restrictive lung disease and that Claimant used inhalers to treat his asthma symptoms. *Id.* However, the burden is on the Claimant to show in detail how his impairments meet a listing, not simply to point to diagnoses or evidence of his symptoms contained in the medical record. *Carmona v. Colvin*, No. 4:13-CV-00102-D, 2014 WL 4386131, at \*6 (E.D.N.C. Aug. 18, 2014) (unpublished) ("where a claimant fails to articulate why her medical impairments do, in fact, meet all of the elements of a given listed impairment, she fails to meet her burden") (internal quotations & citations omitted). Given that Claimant here has made no argument as to how his impairments meet the elements of listings 3.02(B) or 3.03, he has failed to meet his burden and this argument is without merit.

### B. The ALJ's Consideration of the Medical Opinion Evidence

Claimant contends that the ALJ erred in weighing the medical opinion evidence, specifically by giving great weight to the opinions of Dr. Ferris, a consultative examiner, and Drs. Kumar and Jessup, non-examining consultants, and by failing to give any weight to the statements and opinion

10

of Claimant's treating and examining sources, Dr. Beasley and Ashley Oxendine.[2] Pl.'s Mem. at 14-16. Defendant responds that the ALJ properly weighed the medical reports and opinion evidence and gave great weight to the opinions of state agency consultants Drs. Kumar and Jessup because their opinions were consistent with Claimant's testimony and the objective medical evidence. Def.'s Mem. [DE-42] at 10-12. Further, as to the evidence from Claimant's treating sources, Defendant argues that Claimant has failed to point to any specific opinion within the medical records that establishes that Claimant is disabled and simply because those medical records mention Claimant's diagnoses does not establish that Claimant is disabled as a result of those conditions. *Id.*

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1); 416.927(c)(1). More weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2); 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion

---

[2] The medical evidence shows that Claimant was treated by two physician assistants, named Suzette Oxendine (R. 318), and Ashley Locklear (R. 364). Presumably, Claimant's argument refers to both individuals.

11

to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) any other relevant factors. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citation omitted); *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)). The ALJ is not required, however, to discuss all of these factors. *Ware*, 2012 WL 6645000, at *2 (citing *Oldham v. Astrue*, 509 F. 3d 1254, 1258 (10th Cir. 2007); *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008) (unpublished)). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), she must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R.

12

§§ 404.1527(a)(2); 416.927(a)(2). "Only those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013) (unpublished) (citations omitted), *adopted by* 2013 WL 5350870 (E.D.N.C. Sept. 24, 2013). Further, "while medical records constitute evidence that the ALJ must consider, medical records are not necessarily 'medical opinion' evidence as contemplated by the regulations." *Id.*

The regulations define "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). S.S.R. 06-03p provides that "only 'acceptable medical sources' can give us medical opinions" or "be considered treating sources . . . whose medical opinions may be entitled to controlling weight." 2006 WL 2329939, at *2 (Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1527(a)(2), (d); 416.927(a)(2), (d)). Opinions from other medical sources who are not acceptable medical sources, in contrast, are entitled to "significantly less weight." *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Other medical sources include "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." S.S.R. 06-03p, 2006 WL 2329939, at *2; 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The Social Security Administration recognizes the importance of other medical sources, by stating that these sources "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."

13

S.S.R. 06-03p, 2006 WL 2329939, at *3. Evidence from other medical sources may be used "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work . . . ." 20 C.F.R. §§ 404.1513(d), 416.913(d). Thus, while opinions from other medical sources must be weighed and considered by the ALJ, they are not "acceptable medical sources" as defined in 20 C.F.R. §§ 404.1513(a) and 416.913(a) and cannot be afforded controlling weight. S.S.R. 06-03p, 2006 WL 2329939, at *2.

## 1. Claimant's Treating Sources: Dr. Beasley, Suzette Oxendine, and Ashley Locklear

Claimant argues that the ALJ failed to mention or assign any weight to the statements and opinions from Claimant's treating and examining sources. Pl.'s Mem. at 15. Further, Claimant argues that Dr. Beasley's statements and opinions establish a diagnosis for restrictive lung disease and asthma, and Dr. Beasley's opinion should have been given controlling weight or at least great weight. *Id.* at 14. Defendant argues that the ALJ properly considered the medical evidence from Claimant's treating sources and determined that these records did not establish that Claimant was disabled. Def.'s Mem. at 10-11. Claimant's argument on this issue is without merit.

As an initial matter, Claimant has failed to identify any particular opinion rendered by one of his treating sources that the ALJ failed to consider. The only evidence cited to by Claimant in support of his argument is his diagnosis for lung disease and asthma. Pl.'s Mem. at 14. Diagnoses, however, are not medical opinions. *Monroe v. Colvin*, No. 7:13-CV-FL, 2014 WL 7404136, at *3 (E.D.N.C. Dec. 30, 2014) (unpublished) ("The diagnoses provided in the reports, however, do not themselves constitute medical opinions because they do not reflect 'judgments about the nature and severity of [Claimant's] impairments,' or [Claimant's] abilities or restrictions.") (citing 20 C.F.R.

14

§ 404.1527(a)(2)); *see also Phillips v. Colvin*, No 3:13-CV-00307-MOC, 2014 WL 1713788, at \*6 (W.D.N.C. Apr. 30, 2014) (holding that where there is no "medical conclusion or opinion concerning the impact of such diagnosis—either by expressing an opinion as to the impact on plaintiff's ability to do work-related activities or perform daily activities—such is not a medical opinion within the meaning of 20 C.F.R. § 416.927(a)(2)"); *Money v. Astrue*, No. 5:09CV42-RLV-DSC, 2009-WL-7449241, at \*7 (W.D.N.C. Dec. 9, 2009) ("'[T]he mere fact that Plaintiff was diagnosed with certain impairments is insufficient to prove disability and says nothing about the severity of the impairments.'"). Accordingly, Claimant's argument that the ALJ should have given Dr. Beasley's opinions controlling weight, Pl.'s Mem. at 15, is without merit, as there are no opinions within the meaning of the Social Security Regulations that were in the record before the ALJ. Further, not only was the record before the ALJ devoid of any opinions rendered by Ashley Locklear and Suzette Oxendine, even if such opinions existed, Locklear and Oxendine are physician assistants and are therefore not acceptable medical sources who could render opinions that would be entitled to controlling weight. S.S.R. 06-03p, 2006 WL 2329939, at \*2 (discussing that while opinions from other medical sources such as physician assistants must be weighed and considered by the ALJ, they are not "acceptable medical sources" as defined in 20 C.F.R. §§ 404.1513(a) and 416.913(a) and cannot be afforded controlling weight).

Additionally, substantial evidence supports the ALJ's treatment and consideration of the medical evidence of record from Claimant's treating sources: Dr. Beasley, Ashley Locklear, and Suzette Oxendine. The ALJ thoroughly discussed the treatment notes from Claimant's treating sources (R. 126-28), noting among other things that: (1) the CT scan and chest x-ray taken during Claimant's hospitalization in September 2010 were normal (R. 296-97); (2) on examination,

15

Claimant's lungs were clear, there were no rhonchi or rales, there was no increased effort, and there was a regular respiratory rate (R. 372) (February 28, 2012 treatment note by Dr. Beasley describing Claimant's lung functions as such); (3) Claimant's breath sounds were abnormal and diminished at times although there was no wheezing (R. 364) (May 17, 2012 treatment note by Ashley Locklear describing Claimant's lung functions as such); (4) Claimant continued to smoke (R. 375) (March 13, 2012 treatment note by Ashley Locklear discussing Claimant continuing to smoke); and (5) Claimant continued to use Advair and Spiriva (R. 320-21) (September 8, 2010 treatment note by Suzette Oxendine directing continued use of Advair and Spiriva). Thus, the ALJ properly considered the treatment notes and medical records provided by Dr. Beasley, Ashley Locklear, and Suzette Oxendine, as required by the regulations. *See Love-Moore*, 2013 WL 5366967, at *11 ("medical records constitute evidence that the ALJ must consider"). Claimant's argument on this issue is thus without merit.

## 2.    Medical Consultant and Non-Examining State Agency Physicians

Claimant argues that the ALJ erred by giving great weight to the opinion of Dr. Locklear, a medical consultant, and to the opinions of Drs. Kumar and Jessup, non-examining state agency physicians. Pl.'s Mem. at 14-16. Defendant responds that substantial evidence supports the ALJ's consideration of these opinions. Def.'s Mem. at 10-12.

Regardless of the source, the ALJ must evaluate every medical opinion received pursuant to 20 C.F.R. §§ 404.1527(c) and 416.927(c), even the opinions of non-examining sources. As a general rule, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1). However, "[t]he testimony of a non-examining physician can be relied upon when it is consistent with the

16

record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (citing *Kyle v. Cohen*, 449 F.2d 489, 482 (4th Cir. 1971)).

Here, substantial evidence supports the ALJ's consideration of the opinions of Dr. Locklear, Dr. Jessup, and Dr. Kumar. As to Dr. Locklear's opinion, the ALJ stated that she

accorded great weight to Dr. Locklear's opinion, who wrote in November 2010 that the claimant was able to dress, undress, button clothes, tie his shoes, dial a telephone, turn a doorknob, make a fist, pick up a coin and a pencil, watch television, use public transportation (Ex. 3F). While his opinion does not specifically address any limitations, it does show the claimant is able to complete activities that are consistent the [RFC] noted herein. Moreover, his opinion is consistent with his own exam findings, as well as with Dr. Beasley's progress notes, which establish the claimant is moderately impaired by COPD.

(R. 129). As to the opinions of Drs. Kumar and Jessup, the ALJ stated that she

accorded great weight to the opinions of the non-examining state agency disability determination physicians as their findings were consistent with the objective medical evidence through the dates they evaluated (through December 2010 and January 2011) (Ex's. 1A, 3A, 5A, and 7A). Their opinions were also consistent with the claimant's testimony, and the more recent evidence such as exhibits 7F through 9F.

*Id.*

Dr. Locklear's consultative exam is contained in the record at pages 330-41 and states, among other findings, that Claimant's lungs were clear, with no wheezes, rales or rhonchi. (R. 332). As the ALJ noted, Dr. Locklear's findings were consistent with Dr. Beasley's treatment notes. *See* (R. 372) (February 28, 2012 treatment note by Dr. Beasley describing Claimant's lungs as "clear to ausculation with no wheezes, rales, or rhonchi"). Here, the ALJ properly considered the consistency of Dr. Locklear's opinion with the other medical evidence of record. *Johnson*, 434 F.3d at 654. Accordingly, substantial evidence supports the ALJ's determination to give Dr. Locklear's opinion great weight.

17

Dr. Kumar's opinion, in the form of physical RFC assessments, determined that Claimant can perform medium work. (R. 81-88, 90-97). Dr. Jessup's opinion, also in the form of physical RFC assessments, reaches the same conclusion. (R. 99-107, 109-17). Substantial evidence supports the reasons given by the ALJ for affording the opinions of Drs. Kumar and Jessup great weight. As one example, the ALJ noted that their opinions were consistent with the Claimant's own testimony, properly considering the consistency of these opinions with other evidence of record. (R. 129); *Johnson*, 434 F.3d at 654. Both Drs. Kumar and Jessup opined that the Claimant could frequently lift and/or carry 25 pounds, and sit (with normal breaks) for six hours in an eight-hour workday. (R. 85, 94, 104, 114). At the hearing, Claimant described having no problems with sitting, and that he could lift 25 or 30 pounds. (R. 49). Accordingly, substantial evidence supports the ALJ's determination to afford great weight to the opinions of Drs. Kumar and Jessup, even though they were non-examining state agency physicians. *Smith*, 795 F.2d at 346 ("[t]he testimony of a non-examining physician can be relied upon when it is consistent with the record."). Claimant's argument as to the medical opinion evidence is thus without merit.

## C. The ALJ's Hypothetical Questions Posed to the VE

Claimant argues that the hypothetical questions posed by the ALJ to the VE were inaccurate and inadequate and cannot constitute substantial evidence to support the ALJ's decision, as the ALJ failed to include in the hypothetical questions Dr. Beasley's observation that Claimant gets tired easily and has shortness of breath, and the limitation to driving for less than six hours as imposed by Dr. Jessup. Pl.'s Mem. at 16-18. Defendant responds that the ALJ properly included in her hypothetical questions all limitations that were supported by the record. Def.'s Mem. at 12-14.

The purpose of a VE's testimony is "to assist the ALJ in determining whether there is work

18

available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (unpublished) (holding the ALJ's hypothetical question "adequately contemplated all of [Claimant's] impairments and resulting limitations" as evidenced by the record); *Cannon v. Astrue*, No. 4:08-CV-160-D, 2010 WL 902485, at *2 (E.D.N.C. Mar. 11, 2010) (unpublished) (same). Further, the task of the reviewing court is simply to determine whether substantial evidence supports the ALJ's decision, not to "substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176. It is insufficient for the Claimant to point to other record evidence and argue that the ALJ's decision is unfounded, *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050, at *14 (E.D.N.C. Jan. 10, 2008) (unpublished), as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Here, the ALJ posed five hypothetical questions to the VE at the administrative hearing. (R. 61-66). The first hypothetical question involved an individual who could perform medium work with the following limitations: able to stand, sit, and walk for at least six hours in an eight hour day with normal breaks, and should avoid concentrated exposure to working around hazards such as unprotected heights or moving machinery, respiratory irritants such as fumes or gases, and temperature extremes, especially high temperatures. (R. 59-60). The second hypothetical question involved an individual who could perform light work with the same limitations. (R. 62). The third hypothetical question reduced the same individual to performing sedentary work. (R. 63). The

19

fourth hypothetical question added a further limitation to the individual who could perform sedentary work: the individual was limited to standing and walking for one hour out of an eight-hour work day. (R. 65). And the fifth hypothetical question limited the individual who could perform sedentary work to working less than a full eight hours per day. *Id.* The ALJ ultimately concluded that Claimant had the RFC to perform medium work with the following limitations: should avoid concentrated exposure to working around hazards such as unprotected heights or moving machinery, respiratory irritants such as fumes, odors, dust, and gas, and temperature extremes, especially high temperatures. (R. 126).

As to Claimant's argument regarding his shortness of breath and tiredness, the ALJ specifically addressed this issue. Claimant cites to pages 345-47 and 368 of the record, where Dr. Beasley recorded Claimant's subjective complaints of having shortness of breath and getting tired easily. Pl.'s Mem. at 17. The ALJ discussed Claimant's complaints, stating

despite the claimant's complaints of exertional shortness of breath, at the follow-up appointment, Dr. Beasley wrote the claimant's lungs were clear, that there was no rhonchi or rales, there was no increased effort, and he noted a regular respiratory rate . . . . [m]oreover, Dr. Beasley noted the CT of his chest was unremarkable, wrote it was unclear as to what was causing the breathing difficulty, and that he had "some type" of restrictive lung disease.

(R. 127) (citing R. 368-69). Thus, the ALJ determined that Dr. Beasley's objective findings and observations contradicted Claimant's subjective complaints of shortness of breath and tiredness. *Id.* Further, the other reasons given by the ALJ to discredit Claimant's subjective complaints of severely debilitating symptoms of tiredness and shortness of breath are supported by the record. The ALJ noted, among other things, that (1) despite his complaints of severely debilitating symptoms, Claimant has had continued improvement with medication, has not been hospitalized since

20

September of 2010, and has continued to use the same medications (R. 320) (September 16, 2010 treatment note stating Claimant was discharged from the hospital on September 6, 2010 and prescribed Advair and Spiriva); (R. 372) (February 28, 2012 treatment note observing Claimant's respiratory function was "clear to ausculation with no wheezes, rales, or rhonchi, no increased effort, regular respiratory rate" and noting Claimant was seeking disability and oxygen); (R. 375) (March 13, 2012 treatment note describing Claimant's COPD as stable and directing continued use of Advair and Spiriva); (2) Claimant did not qualify for continuous oxygen therapy as of May 2012 (R. 389); and (3) Claimant has continued to smoke throughout the period in question (R. 320) (September 16, 2010 treatment note describing Claimant's 25-year history of smoking); (R. 375) (March 13, 2012 treatment note discussing Claimant continuing to smoke and the importance of smoking cessation for his breathing problems). Thus, substantial evidence supports both the ALJ's determination that Claimant's shortness of breath and tiredness were not as debilitating as claimed and the resulting hypothetical questions posed to the VE.

Further, the hypothetical questions posed to the VE and the resulting RFC included limitations due to Claimant's breathing problems The ALJ stated that "due to his persistent breathing problems, he must avoid concentrated exposure to fumes and other pulmonary irritants. He should also avoid concentrated exposure to hazards while working because of his shortness of breath." (R 128). The ALJ thus did not discredit Claimant's complaints entirely, and included the limitations supported by the record in her hypothetical questions and in the RFC determination. Accordingly, the ALJ did not err by failing to include Claimant's complaints of shortness of breath and tiredness in the hypothetical questions posed to the VE.

As to Claimant's argument regarding the limitation to driving for less than six hours,

21

Claimant has misstated the limitation identified by Dr. Jessup. Claimant cites to page 106 of the record for the proposition that Dr. Jessup limited Claimant to driving for less than six hours. Pl.'s Mem. at 17. However, page 106 of the record simply reflects Dr. Jessup's determination that Claimant cannot perform his past relevant work as a dump-truck driver, as that position entailed Claimant sitting for eight hours at a time. (R. 106). Dr. Jessup found that the requirements of the dump-truck driver were inconsistent with the limitations she had identified in Claimant's RFC. *Id.* Earlier in the Physical RFC Assessment, Dr. Jessup opined that Claimant could "sit (with normal breaks) for a total of . . . [a]bout 6 hours in an 8-hour workday." (R. 104). This is the same limitation the ALJ included in the hypothetical questions to the VE. (R. 60) (including in the hypothetical question the limitation that the individual can "sit for six hours in – with normal breaks in an eight hour work day"). Accordingly, as the ALJ incorporated the limitation actually identified by Dr. Jessup in the hypothetical questions posed to the VE, the ALJ did not err in formulating the hypothetical questions, and Claimant's argument as to the "driving limitation" is without merit.

Here, Claimant simply points to other evidence in the record (namely, Claimant's subjective complaints of shortness of breath and tiredness) to support his argument that the hypothetical questions posed by the ALJ were unsupported by the record and did not properly reflect Claimant's limitations. The record shows, however, that the limitations in the hypothetical questions posed by the ALJ are all supported by substantial evidence. Claimant's argument asks the court to overlook its limited scope of review and substitute its judgment for that of the ALJ, instead of inquiring whether substantial evidence in the record supports the limitations identified by the ALJ. *Hays*, 907 F.2d at 1456; *Walker*, 889 F.2d at 50. Accordingly, the court determines that the ALJ posed proper hypothetical questions supported by substantial evidence in the record to the VE, and did not err in

relying on the VE's opinion in response to those hypothetical questions. Claimant's argument on this issue is thus without merit.

## D. The ALJ's Development of the Record

Claimant argues that the ALJ failed to fully and fairly develop the record, noting that "[t]he Commissioner had requested Claimant's medical record from Lumberton Health Center on May 21, 2012 (Tr.394) apparently Claimant's medical records, [sic] were not received before the ALJ issued the decision on August 10, 2012 (Tr.119)." Pl.'s Mem. at 18-20. Defendant responds that the record is fully developed, Claimant has failed to show any prejudice resulting from the alleged failure to develop the record, and Claimant has "failed to acquire any new evidence from Lumberton Health Center that pre-dates the ALJ's decision." Def.'s Mem. at 14-16.

The ALJ has a responsibility to "explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981); *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980)). This "'duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Baysden v. Colvin*, No. 4:12-CV-303-FL, 2014 WL 1056996, at \*9 (E.D.N.C. Mar. 18, 2014) (unpublished) (adopting memorandum and recommendation holding that the ALJ adequately developed the record) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).

An ALJ's failure to fully develop the record only warrants remand when the "failure is prejudicial to the claimant." *Marsh*, 632 F.2d at 300 (citations omitted). "'Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient'" to require

23

remand. *Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at \*8 (E.D.N.C. Sept. 11, 2014) (unpublished) (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)). Instead, "Claimant must provide a factual foundation upon which the court can perceive a gap in the evidentiary record that is prejudicial to Claimant." *Id.* In order to establish prejudice, Claimant must show that "'he or she could and would have adduced evidence that might have altered the result.'" *Id.* (quoting *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)); *see also King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (describing prejudice as occurring when the ALJ's decision "might reasonably have been different had that evidence been before him when his decision was rendered").

Here, during the hearing, the ALJ discussed with Claimant the need to obtain his complete medical records. (R. 35-40). Specifically, the ALJ noted that there were no records from the time between November 2010 and February 2011. (R. 35-36). The ALJ discussed with Claimant his medical treatment during this time, to determine what records were needed. (R. 35-40). Based off of Claimant's testimony at the hearing about his medical treatment, the ALJ planned to acquire records from Dr. Beasley, Lumberton Health Center, and Roberson Health Center. (R. 37-39). In her decision, the ALJ stated that

[t]he record was held open after the hearing date to allow for the submission of additional records. When received, the additional medical evidence was added at exhibits 7F through 9F. The record was then closed and the following decision was made with full consideration of all evidence contained in the record.

(R. 122, 355-97) (additional exhibits added after the hearing date and prior to the ALJ's decision). In support of his argument, Claimant points to the letter wherein the Commissioner requested Claimant's medical records from Lumberton Health Center, dated May 12, 2012 (R. 394), and states that "apparently Claimant's medical records, [sic] were not received before the ALJ issued the

24

decision on August 10, 2012." Pl.'s Mem. at 19. Claimant fails, however, to point to any medical evidence dated between November 2010 and February 2011, the time period identified by the ALJ where Claimant had not provided any medical records, that the ALJ failed to acquire.[3] *See* (R. 35-40).

Additionally, the ALJ acquired 42 pages of evidence between the hearing date and the date of her decision. (R. 355-97). The Court Transcript Index identifies two sets of these records as being produced by the Lumberton Health Center. (R. 4) (identifying pp. 364-97 as coming from the Lumberton Health Center). While some of these treatment notes are labeled as coming from "Robeson Health Care Corp." (R. 366) (May 17, 2012 treatment note signed by Ashley Locklear labeled from Robeson Health Care Corp.), other evidence of record demonstrates that Lumberton Health Center is a subsidiary of Robeson Health Care Corporation. *See* (R. 16) (letter from Ashley Locklear dated September 25, 2012 on Robeson Health Care Corp. stationary stating that Claimant has been treated by Lumberton Health Center since September 2010 and including Lumberton Health Center in a list of Robeson Health Care Corp.'s community health centers).

Here, the ALJ did obtain additional medical records after the hearing date prior to issuing her decision, and thus did not fail in her duty to aide the *pro se* Claimant and ensure that the record was fully developed. And even assuming there was a failure to develop the record here, Claimant has failed to meet his burden to show that this failure was prejudicial sufficient to require remand. *Marsh*, 632 F.2d at 300 (citations omitted) (discussing that an ALJ's failure to fully develop the record only warrants remand when the "failure is prejudicial to the claimant."). Aside from making

---

[3] Claimant does identify the additional medical records submitted to the Appeals Council, Pl.'s Mem. at 19, but that evidence post-dates the ALJ's decision and is addressed by the Claimant in a separate argument considered below. *See* Pl.'s Mem. at 20-21.

the conclusory statement that the ALJ "failed to obtain and or consider all Claimants [sic] medical records that were relevant and material to the issue before the Commissioner," Pl.'s Mem. at 20, Plaintiff has failed to point to any evidence he "could and would have adduced" that would have changed the ALJ's decision. *Schaller*, 2014 WL 4537184, at \*8. Such "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient" to require remand. *Id.* (citation & internal quotation marks omitted). Accordingly, Claimant's argument on this issue is without merit.

## E.    Additional Medical Evidence

Claimant argues that the Appeals Council erred by failing to consider Claimant's new medical records submitted to the Appeals Council after the ALJ's decision. Pl.'s Mem. at 21. Claimant also argues that he has shown good cause to remand the case to order additional evidence to be taken, Pl.'s Mem. at 20, but Claimant has not attached any additional evidence to his Motion for Judgment on the Pleadings. Accordingly, the court considers that argument as part of Claimant's argument about the Appeals Council's failure to consider the new medical records. Defendant responds that substantial evidence supports the decision of the Appeals Council to deny review. Def.'s Mem. at 16-20.

The Appeals Council must consider evidence submitted by a claimant with his or her request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991), *superseded on other grounds by* 20 C.F.R. § 404.1527; 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it

26

which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative, and material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96; *see also Nance v. Astrue*, No. 7:10-CV-218-FL, 2011 WL 4899754, at \*4 (E.D.N.C. Sept. 20, 2011) (unpublished) (explaining that at this stage, Claimant bears the burden of demonstrating that additional evidence is new, material, and relates to the time period before the ALJ's decision) (citations omitted), *adopted by* 2011 WL 4888868 (E.D.N.C. Oct. 13, 2011). "[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. The Appeals Council need not, however, review nor consider new evidence that relates only to a time period after the ALJ issues her decision. *See* 20 C.F.R. § 416.1476(b)(1) (stating that, on review, "[i]f [a claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his/her] right to file a new application."). Additionally, the Appeals Council does not need to explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F. 3d 700, 702 (4th Cir. 2011).

In this case, the relevant time period extends from September 1, 2010 (Claimant's alleged disability onset date) to August 10, 2012 (the date of the ALJ's decision). The Appeals Council incorporated the following additional evidence into the record: (1) a note written by Shawana Faulk, a Family Nurse Practitioner ("FNP"), dated September 6, 2013, on a Robeson Health Care Corp./Lumberton Health Center prescription pad stating that Claimant "is disabled due to COPD and

27

emphysema. He is on oxygen 24 hours a day @ 2L/NC" (R. 10); (2) treatment notes from Shawana Faulk, FNP from Robeson Health Care Corporation/Lumberton Health Center dated September 6, 2013 containing Claimant's "Clinical Summary and Patient Care Plan" and noting that Claimant's COPD was stable, directing that he continue taking Advair and Spiriva, and advising Claimant to stop smoking (R. 11-12); (3) a report by the Robeson County Department of Social Services, stating that Claimant has COPD and emphysema, Claimant is permanently restricted from working because of his "severe shortness of breath with mild exertion" and is limited to sitting for four to six hours a day, which is dated November 30, 2012 and appears to be signed by Shawana Faulk (R. 14-15); and (4) a letter from Ashley Locklear dated September 25, 2012, stating that Claimant has been a patient of Lumberton Health Center since September 2010, he is now using portable oxygen but continues to smoke daily, he is stable and has no new symptoms of shortness of breath, and that "it will be difficult for [Claimant] to find gainful employment and maintain position due to his symptoms or worsening [of] his medical condition." (R. 16).

The Appeals Council issued two written decisions denying Claimant's request for review and returning the newly submitted evidence to Claimant. In the first decision, dated September 10, 2013, the Appeals Council reviewed the new evidence submitted and stated

[w]e also looked at medical records from Ashley Locklear, M.S., PA-C, dated September 25, 2012 to November 30, 2012 (four pages). The [ALJ] decided your case through August 10, 2012. This is new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 10, 2012.

(R. 6). In the second decision, dated October 31, 2013, the Appeals Council again reviewed the new evidence submitted and stated

[w]e also looked at medical records from RHCC, dated September 6, 2013 and from

28

Ashley Locklear, M.S., PA-C, dated September 25, 2012 to November 1, 2012 (four pages). The [ALJ] decided your case through August 10, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 10, 2012.

(R. 2).

As an initial matter, Claimant makes no argument as to whether any of the exhibits presented to the Appeals Council are new, material, or relevant to the time period in question beyond a conclusory allegation. *See Nance*, 2011 WL 4899754, at \*4 (explaining that Claimant bears this burden). Claimant simply argues that the Appeals Council erred by failing to consider the new and material medical evidence. Pl.'s Mem. at 21.

In *Shamlee v. Astrue*, the court considered whether submission of additional lab reports and a questionnaire completed by the claimant's treating physician warranted review by the Appeals Council. No. 2:09-CV-290, 2010 WL 3187643, at \*10-12 (E.D. Va. May 28, 2010) (unpublished), *adopted by* 2010 WL 3187609 (E.D. Va. Aug. 11, 2010). The *Shamlee* court clarified that new evidence means "evidence not in existence, nor available" at the time of the ALJ's decision. *Id.* at \*10 (citing *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). The court determined that the Appeals Council did not err in declining review as the claimant failed "to make little more than a conclusory argument that the additional pages are new and material." *Id.* at \*11. Further, the court was particularly concerned with the availability of the evidence at the time of the ALJ's decision. *Id.* ("Even if new, was not that information available at the time of the ALJ's opinion?"). Here, all four of Claimant's exhibits are new, as they post-date the ALJ's decision and thus they were "evidence not in existence, nor available" on the date of the ALJ's decision. *Shamlee*, 2010 WL 3187643, at \*10 (citation omitted).

29

Despite the fact that Claimant failed to argue how the new exhibits are relevant to the time period in question as required by *Wilkins*, a review of the exhibits demonstrates that they document Claimant's condition at the time they were written, not prior to the ALJ's decision date. 953 F.2d at 95-96. All of the exhibits reflect Claimant's condition as of date they were written, and provide no information suggesting that they actually reflect Claimant's condition during the time period in question. *Price v. Colvin*, No. 5:12-CV-716-FL, 2014 WL 29457, at * 10 (E.D.N.C. Jan. 3, 2014) (unpublished) (adopting memorandum and recommendation determining that additional evidence was not relevant to the time period at issue because the new evidence, obtained five weeks after the ALJ's decision, simply reflected the claimant's condition at the time of testing) (citations omitted). Accordingly, Claimant has failed to show that the new exhibits are relevant to his condition during the time period in question. *See Nance*, 2011 WL 3899754, at *4 (explaining that Claimant bears this burden); *accord Shamlee*, 2010 WL 3187643, at *11 (recommending that claimant's argument be denied where she "failed to show that the additional evidence was new and material"). Further, as to materiality, Claimant simply states that the new exhibits were "also material evidence of Claimant [sic] COPD impairment that began in 2012" without any specific argument to demonstrate how the new exhibits bear on his COPD. Pl.'s Mem. at 21. Simply labeling the exhibits as material fails to meet Claimant's burden here. *Nance*, 2011 WL 3899754, at *4; *Shamlee*, 2010 WL 3187643, at *11.

Accordingly, substantial evidence supports the decision of the Appeals Council to deny review of Claimant's case, even after considering the additional evidence submitted by Claimant and incorporated into the record by the Appeals Council, and Claimant has failed to meet his burden of proving that the additional evidence is material and relevant to the time period at issue. Thus,

Claimant's argument on this issue is without merit.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-40] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-41] is ALLOWED, and Defendant's final decision is affirmed.

Submitted, this the 31st day of March, 2015.

*Ro ht for f*

Robert B. Jones, Jr.
United States Magistrate Judge